FILED

Mar 06 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT
L.M. (MOTHER)

Benjamin J. Church
Church Law Office
Monticello, Indiana

ATTORNEY FOR APPELLANT
SA.S. (FATHER)

Christopher P. Phillips
Phillips Law Office, P.C.
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

S.S. *(Minor Child)*

and

L.M. *(Mother)* and Sa.S. *(Father)*,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 6, 2019

Court of Appeals Case No.
18A-JT-2370

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause No.
91C01-1712-JT-30

**Robb, Judge.**

# Case Summary and Issue

L.M. ("Mother") and Sa.S. ("Father") (collectively "Parents") separately appeal the juvenile court's judgment terminating their parental rights to S.S. ("Child"). Parents present several issues for our review which we consolidate and restate as: whether the juvenile court erred in terminating their parental rights. Concluding the juvenile court did not err in terminating either Mother's or Father's parental rights, we affirm.

# Facts and Procedural History

Mother and Father are the biological parents of Child who was born on June 30, 2013.[1] Child tested positive for THC at birth and the Indiana Department of Child Services ("DCS") conducted an informal adjustment and then a child in need of services ("CHINS") case before reunifying Child with Father.

On May 16, 2016, DCS received a report that Parents were neglecting Child and using illegal drugs in his presence. After Parents were contacted by DCS, Mother refused a drug screen and Father tested positive for methamphetamine, amphetamine, and THC. Parents fled with Child to Florida, but Father eventually returned with Child on May 27 and Child was removed from his

---

[1] Paternity was established in a prior legal action.

care. Child was placed in relative care with paternal grandfather where Child remained throughout the duration of this case.

[4] DCS filed its CHINS petition on June 1, 2016 based on Parents' drug use in the presence of the Child, Mother's refusal to take a drug screen, Father's positive drug test, Parents' decision to flee to Florida, and Parents' prior involvement with DCS. The juvenile court conducted a detention hearing on June 2 at which only Father appeared and the juvenile court authorized Child's continued removal and placement in relative care. Due to Father being on probation when he fled to Florida, he was incarcerated from June to August 2016 for violating the terms of his probation.

[5] Following a factfinding hearing, the juvenile court adjudicated Child to be CHINS on September 28, 2016. The juvenile court ordered Parents to, among other things: maintain contact with DCS; maintain suitable, safe, and stable housing; maintain a stable source of income; not use, consume, trade or sell any illegal controlled substances; obey the law; submit to random drug screens; attend all scheduled visitations with the Child; engage in home based case management; and complete a substance abuse assessment and all treatment recommendations therefrom. Appellant's [Mother's] Appendix, Volume II 19-23.

[6] After Parents failed to comply with many of the terms ordered by the juvenile court, DCS filed a verified petition for the termination of the parent-child relationship ("TPR") between Father, Mother, and Child on December 28,

2017. Following a TPR hearing on June 13 and June 18, 2018, the juvenile court issued its termination order on September 4, which included 160 findings of fact[2] and concluding DCS had met the statutory requirements for terminating the parent-child relationships. *See id.* at 65-66. Father and Mother now separately appeal. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Standard of Review

[7] We begin, as we often do, by emphasizing that the right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re D.D.,* 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied.* The law provides for the termination of these constitutionally protected rights, however, when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). We subordinate the interests of the parents to those

---

[2] While we commend the juvenile court for its extensive findings and thorough order, we note that many of the juvenile court's findings are merely recitations of the evidence. *See* Appellant's App., Vol. II at 45-65. "A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z." *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1122 (Ind. Ct. App. 2013). Instead, "a finding of fact must indicate not what someone said is true but what is determined to be true, for that is the trier of fact's duty." *Id.* "The trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *Id.* Because neither Father nor Mother has challenged these findings on appeal, however, any such argument has been waived. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings were accepted as true). Regardless, we take this opportunity to remind trial courts that they must adopt evidence or testimony if the court wishes to make such a finding.

of the child when evaluating the circumstances surrounding a termination. *In re K.S.,* 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

[8] We do not reweigh the evidence or judge the credibility of witnesses when reviewing the termination of parental rights. *In re D.D.,* 804 N.E.2d at 265. Rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* Furthermore, in deference to the juvenile court's unique position to assess the evidence, we only set aside its judgment terminating a parent-child relationship when it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002).

[9] Where, as here, the juvenile court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We must first determine whether the evidence supports the findings, then we must determine whether the findings support the judgment. *Id.* Findings will only be set aside if they are clearly erroneous and findings are only clearly erroneous "when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

## II. Termination Order

[10] Our supreme court has described the involuntary termination of parental rights as "an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed." *In re C.G.,* 954 N.E.2d 910, 916 (Ind.

2011).  In order for the State to terminate parental rights, Indiana Code section 31-35-2-4(b)(2) provides the State must prove, in relevant part:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> \* \* \*
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[11]    Notably, the provisions of Indiana Code section 31-35-2-4(b)(2)(B) are written in the disjunctive, and thus the State need only prove one of those statutory elements, *In re L.S.*, 717 N.E.2d at 209, but must do so by clear and convincing evidence, Ind. Code § 31-34-12-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009).  If a juvenile court determines the allegations of the petition are true, then the court shall terminate the parent-child relationship.  Ind. Code § 31-35-2-8(a).

[12]     We also note that "[i]t is common practice for our trial courts to conduct termination hearings as well as the CHINS proceedings underlying them involving multiple children and/or multiple parents in a single proceeding." *In re V.A.*, 51 N.E.3d 1140, 1146 (Ind. 2016).  However, we must weigh the evidence as it pertains to each Parent.  *See id.*

## A.  Remedy of Conditions

[13]     Both Mother and Father contend DCS failed to prove by clear and convincing evidence that the circumstances leading to removal would not be remedied.  We engage in a two-step analysis to determine whether such conditions will be remedied: "First, we must ascertain what conditions led to [Child's] placement and retention in foster care.  Second, we determine whether there is a reasonable probability that those conditions will not be remedied." *In re K.T.K.*, 989 N.E.2d 1225, 1231 (Ind. 2013) (quotation omitted).

[14]     Child was removed from Parents due to ongoing substance abuse issues and their use of illegal drugs in front of Child.  The juvenile court made 136 findings "relating to continued removal and reasonable probability reasons for removal not remedied."  Appellant's App., Vol. II at 49.  And, because neither Father nor Mother has challenged these findings on appeal, we must accept these findings as true. *McMaster*, 681 N.E.2d at 747.

[15]     A juvenile court assesses whether a reasonable probability exists that the conditions justifying a child's removal or continued placement outside his parent's care will not be remedied by judging the parent's fitness to care for the

child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). Habitual conduct may include criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment, but the services offered to the parent and the parent's response to those services can also be evidence demonstrating that conditions will be remedied. *A.D.S v. Indiana Dept. of Child Services*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*.

### *1. Mother*

[16] We begin our review with Mother. The record reveals that the Child tested positive for THC at birth and Mother has never had primary custody of the Child or acted as the Child's primary caregiver. Mother resided in Florida from May 2016 until December 2017 and during that time Mother only had visitation with the Child once every three months. Mother's oral drug screens were consistently positive for THC and she refused to take hair drug screens on multiple occasions. DCS recommended a drug treatment facility in Florida but Mother failed to complete the program or attend the required sessions. Mother moved back to Indiana in December 2017 after she became pregnant with a child fathered by her new boyfriend. Since her return, Mother's visitation with the Child has increased to once a week and she produced several negative drug tests during her pregnancy. Mother requested additional visitation with the Child a month before the TPR hearing and completed a substance abuse assessment a week before the TPR hearing.

[17] On appeal, Mother's sole argument is that the juvenile court erred by disregarding her recent progress. However, since Mother failed to specifically challenge any of the juvenile court's findings, we need only consider whether the findings support the juvenile court's conclusion. *Bester*, 839 N.E.2d at 147. We conclude that they do.

[18] Substance abuse is the underlying issue in this case and Mother has failed to complete a substance abuse program despite being counseled to participate in such a program for over a year and a half. Accounting for the fact that the Child tested positive for THC at birth in 2013, Mother has failed to complete a substance abuse program for over five years and the record is also absent of any voluntary efforts Mother has made with the aim of improving her substance abuse issues.

[19] Mother's efforts are similarly unimpressive with regard to her relationship with the Child. Family Case Manager ("FCM") Brooke Brown testified that Mother lacks a strong bond with the Child and that Mother disregarded her suggestions for improvement. Likewise, the guardian ad litem testified that Mother's relationship with the Child more closely resembles a friendship than that of a parent and child. We have often noted that evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services demonstrates the requisite reasonable probability that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Such is the case here.

To the extent Mother highlights her recent progress and completion of a substance abuse assessment one week before the TPR hearing, the juvenile court was well within its discretion to "disregard the efforts Mother made only shortly before termination and to weigh more heavily Mother's history of conduct prior to those efforts." *In re K.T.K.*, 989 N.E.2d at 1234. For these reasons, we conclude the juvenile court's findings supported its conclusion. *See, e.g., In re E.M.*, 4 N.E.3d at 644 (findings regarding a parent's continued non-compliance with services supported juvenile court's conclusion the conditions under which children were removed from the parent's care would not be remedied).

### 2. Father

Unlike Mother, Father's efforts were initially quite promising. After the Child's removal and Father's release from incarceration for violating his probation, Father engaged in home based case management and cooperated with DCS. In return, Father was provided additional responsibility which included picking the Child up from preschool and having unsupervised time with the Child before daycare. Father eventually began arriving late and then failed to pick the Child up at all. Thereafter, Father's behavior worsened, and his cooperation declined.

Father repeatedly tested positive for cocaine, methamphetamine, amphetamine, and/or THC since the inception of this case. DCS employees observed Father under the influence on multiple occasions during which his behavior was irrational and he would appear aggressive and threatening. Father completed

only seven days of a 60-to-90-day inpatient treatment program and was eventually arrested on charges of possession of a syringe, methamphetamine, and marijuana in September 2017.

[23] Like Mother, Father emphasizes his recent efforts and argues the juvenile court erred in concluding the relevant conditions were unlikely to be remedied because of his recent cooperation, the fact that he has not missed any visits with the Child since the beginning of 2018, his current employment, and that he was "capable of progress with his substance abuse, but needs to work on following through with the program." Appellant's Brief on Behalf of Father at 13. In so arguing, Father contends his case is akin to *In re J.M.*, where DCS sought to terminate the parental rights of both the mother and father of a child after both were incarcerated on drug-related charges. 908 N.E.2d 191 (Ind. 2009).

[24] In *J.M.*, the juvenile court refused to terminate the parental rights after receiving testimony that both parents could be released early from prison for completing certain degrees, that both parents had completed a number of self-improvement programs while incarcerated, and that the father had secured employment and housing upon his release from prison. Our supreme court agreed with the juvenile court's refusal to terminate because the parents' ability to establish a proper household for the child could be determined within a relatively short period of time without threatening the child's need for permanency.

[25] Contrary to Father's assertion, however, almost none of the factors considered by our supreme court in *J.M.* are applicable here. First, to the extent Father

contends he was employed at the time of the TPR hearing, the juvenile court found that he was not. *See* Appellant's App., Vol. II at 60, ¶ 99. Indeed, Father's own testimony at the TPR hearing established that he was unemployed. *See* Transcript, Volume 2 at 120. Second, despite the similarity between Father's two arrests and the arrests of the parents in *J.M.*, both of which were after their children's birth, Father has consistently refused help with his substance abuse issues and has failed to take any significant steps to obtain sobriety—unlike the number of self-improvement programs completed in *J.M.*

[26] Finally, as with Mother, the juvenile court was free to disregard Father's attendance at five narcotics anonymous meetings and his month-long sobriety prior to the TPR hearing in favor of his long-running pattern of behavior. *In re K.T.K.*, 989 N.E.2d at 1234. In short, we agree with the juvenile court that the evidence establishes a reasonable probability that the conditions that resulted in the Child's removal and continued placement outside the home will not be remedied.[3]

## B. Best Interests

[27] Both Father and Mother also contend DCS failed to prove termination of their parental rights was in the Child's best interest. In determining the best interests

---

[3] Father also argues the juvenile court erred in finding that the continuation of the parent-child relationship poses a threat to the Child's well-being. However, as noted above, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element be proven to terminate Father's parental rights. *See In re L.S.*, 717 N.E.2d at 209. Having concluded the evidence is sufficient to show a reasonable probability the conditions resulting in the Child's removal will not be remedied, we need not consider whether the parent-child relationship poses a threat to the Child's well-being.

of a child, the juvenile court must "look beyond the factors identified by the DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). And the juvenile court "need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before terminating the parent-child relationship." *In re K.T.K.,* 989 N.E.2d at 1235.

[28]  Once again, neither Father nor Mother has challenged any of the juvenile court's findings of fact and therefore, we need only determine whether those findings support the juvenile court's conclusion. *Bester*, 839 N.E.2d at 147. In this regard, the juvenile court found:

1.  [FCM] Brown testified that the termination was in the [C]hild's best interest in that the Father continues to struggle with housing and income stability, poor decision making, illegal substance use which produces erratic, irrational behavior, and that Mother chose to live in Florida instead of Indiana to build a bond with [the Child], that throughout the case Mother only visited [the Child] when she was home for Court, and consistently tested positive for THC until she became pregnant while home for Court. Since Mother's return [to Indiana] in December of 2017 she did not request additional visitation until May of 2018.

2.  [FCM] Brown testified that the relationship between the [C]hild and Mother was more of a friend relationship than a Mother-[child] relationship. This relationship has been only minimally enhanced since Mother's return in December.

3.      [FCM] Brown testified that the [C]hild needs consistency in her everyday life, and permanency and had been placed with her grandfather a majority of her life.

4.      [The guardian ad litem] testified that the [C]hild needs stable parents and consistency.

5.      [The guardian ad litem] testified that the [C]hild has been with [the same] placement for over half her life and bonded with paternal grandfather and his significant other.

Appellant's App., Vol. II at 64.

[29]    We conclude that the juvenile court's findings support its judgment. As discussed above, DCS produced ample evidence that the conditions resulting in removal will not be remedied. This, combined with FCM Brown's testimony that termination was in the Child's best interest, is sufficient to show termination is in the child's best interest by clear and convincing evidence. *See, e.g., In re A.I.,* 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (holding recommendations of the case manager, court-appointed advocate, and evidence tending to show that the conditions resulting in removal will not be remedied is enough to show termination is in the child's best interests by clear and convincing evidence), *trans. denied.* Neither parent has demonstrated an ability to effectively use the services provided to them, *see In re T.F.,* 743 N.E.2d 766, 776 (Ind. Ct. App. 2001), *trans. denied,* and it is uncontested that Child is doing well in foster placement with her paternal grandfather. Accordingly, the juvenile court did not err in its determination of the Child's best interests.

# Conclusion

[30]     We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). Finding no such error here, we affirm the juvenile court.

[31]     Affirmed.

Riley, J., and Kirsch, J., concur.