# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2020, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT M.S.

Renee M. Ortega
Lake County Juvenile Public Defender's Office
Crown Point, Indiana


ATTORNEY FOR APPELLANT T.P.

Joann M. Price Franklin
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent–Child Relationship of V.P. (Minor Child)<br><br>and<br><br>M.S. (Mother) and T.P. (Alleged Father),<br><br>*Appellants-Respondents,*<br><br>v. | February 4, 2020<br><br>Court of Appeals Case No. 19A-JT-2018<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Thomas P. Stefaniak, Jr., Judge<br><br>Trial Court Cause No. 45D06-1905-JT-132 |

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Bradford, Chief Judge.**

# Case Summary

M.S. ("Mother") and T.P. ("Father") (collectively, "Parents") are the biological parents of V.P. ("Child"). Both Mother and Child tested positive for cocaine at Child's birth. The Department of Child Services ("DCS") took custody of Child after Parents abandoned Child at the hospital. Child was subsequently found to be a child in need of services ("CHINS"). Following the CHINS determination, Parents completed some initial assessments but did not complete recommended services. Given Parents' failure to complete services, DCS eventually petitioned to terminate their parental rights to Child. Following an evidentiary hearing, the juvenile court granted DCS's petition to terminate Parents' parental rights. On appeal, Parents contend that DCS failed to present

sufficient evidence to support the termination of their parental rights.[1]  We affirm.

# Facts and Procedural History

Child was born on February 25, 2018.  At the time of Child's birth, both Mother and Child tested positive for cocaine.  Child remained at the hospital following his birth.  Parents abandoned Child at the hospital, failing to visit Child or pick Child up from the hospital upon his discharge.  Child was placed in a foster home upon his discharge from the hospital.  He has since remained in this placement.

DCS filed a CHINS petition on March 6, 2018, in which it alleged Child was a CHINS due to concerns of substance abuse and neglect by Parents.  DCS further stated that

> Due to there being no caregiver for the child, the Mother's admission of using cocaine while pregnant with the child, and the family's recent and previous history with DCS for substance abuse issues and neglect, DCS took custody of the child and placed the child in foster care after he was released from the hospital.

---

[1]  At the outset, we note that the brief filed by Father on appeal is entitled "Father's Memorandum of Law in Support of Mother's Appeal."  Despite the title of this filing, the record reveals that Father filed a notice of appeal and presented arguments that both challenged the termination of his parental rights to Child and supported Mother's appeal.  As such, we will treat Father's brief as both an appeal of the order terminating his parental rights to Child and additional argument in support of Mother's appeal.

Ex. p. 16. In its April 13, 2018 predispositional report, DCS indicated that "[t]here continues to be resistance from the parents in regards to services as well as visiting their child." Ex. p. 35. On July 19, 2018, the juvenile court issued an order on factfinding and dispositional decree in which it found Child to be a CHINS, ordered that Child remain in his foster placement, and incorporated DCS's recommendations relating to services. These services included:

> [Parents] are to have supervised visits with [Child].
>
> [Father] is to have a substance abuse assessment and follow through with the recommendations.
>
> [Father] should work with the Fatherhood Initiative program to establish paternity.
>
> [Parents] are to participate in random drug screens.
>
> [Mother] should continue with her services through her open CHINS case, which include the following: [Mother] is to participate in individual therapy, domestic violence education and therapy, Intensive Outpatient Substance Abuse services (IOT), parent education, and follow through with the recommendations from her psychological assessment.
>
> [Father] is to have a parenting assessment and follow through with all recommendations.
>
> [Father] is to participate in recommendations from his initial clinical assessment, which include the following: individual therapy, home-based casework services, psychological assessment, and a deferred recommendation that once [Mother] completes her DV classes, the couple should participate in couple's counseling or co-parenting to address healthy boundaries, communication, and trust.

Ex. p. 36.

Parents completed some of the assessments ordered by the juvenile court but did not consistently participate in services, and Mother continued to test positive for drugs. Parents last visited with Child in July of 2018. Parents ultimately failed to make "any progress towards reunification" with Child. Tr. p. 13.

On May 9, 2019, DCS filed a petition to terminate Parents' parental rights. The juvenile court conducted an evidentiary hearing on July 24, 2019. Neither Mother nor Father appeared for the evidentiary hearing. Following conclusion of the evidence, the juvenile court took the matter under advisement. On July 30, 2019, the juvenile court issued an order terminating Parents' parental rights to Child.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id.* Termination of parental

rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[7] Parents contend that the evidence is insufficient to sustain the termination of their parental rights to Child. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[8] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent–child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

Parents claim that DCS failed to present sufficient evidence to prove by clear and convincing evidence:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child.

Ind. Code § 31-35-2-4(b)(2).

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find that one of the conditions listed therein has been met. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines that one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

[11] DCS does not allege that Child has been adjudicated CHINS on two separate occasions. As such, DCS had to prove either that (1) the conditions resulting in removal from or continued placement outside Parents' home will not be remedied or (2) the continuation of the parent-child relationship poses a threat to Child.

[12] The juvenile court determined that the evidence established a reasonable probability that the conditions that resulted in Child's removal and continued placement outside Parents' care would not be remedied, finding as follows:

> There is a reasonable probability that the conditions resulting in the removal of the child from his parents' home will not be remedied in that: The child became a ward of [DCS] at birth due to the drug usage of mother and the child testing positive for drugs at birth. The child remained in the hospital and the parents did not return for the child. The child was abandoned at the hospital by the parents. The child was removed from parental care on an emergency basis due to the allegations of abuse and/or neglect. Parents have a history with [DCS] for their two other children were wards of [DCS].
>
> Parents were offered services pursuant to a case plan which included substance abuse assessments, parenting assessment, home based casework services, initial clinical assessments, medication evaluation, random drug and alcohol screens, domestic violence therapy, individual therapy, and supervised visitations.
>
> Mother and father have a history of domestic violence issues.
>
> Mother participated in the assessments, but did not participate in the recommended services in the case plan for reunification pursuant to this child's case or the sibling's matters. Mother was

sporadic with visiting the child.  Mother has not seen this child since July 2018.  Mother has not completed the case plan for reunification and has not shown any interest in parenting this child.  Mother does not have any significant bond with the child due to her lack of contact with the child.  Mother continues to test positive on her drug screens.

Father only participated in a portion of the services offered by the [DCS].  Father was sporadic with the visitations with the child.  Father has not visited the child since July of 2018.  [Father] throughout the life of the case had a lot of erratic behaviors and has indicated on numerous occasions that he was not going to participate in the case plan.  Father has shown no interest in parenting this child.  Father does not have any significant bond with this child.  Father also has substance abuse issues to which he is not receiving any treatment.

Neither mother nor father attended the fact[-]finding hearing on the petition to terminate their parental rights.

The permanency plan was changed to adoption on March 22, 2019.

Neither parent is providing any emotional or financial support for the child.  Neither parent has completed any case plan for reunification.  Neither parent is in a position to properly parent this child.  The child has been in placement since birth and is bonded and thriving.  This child has never been in parental care or custody.

The child remains outside of the parents' care.  The original allegations of neglect have not been remedied by the parents.  Neither of these parents have demonstrated an ability to independently parent the child and provide the necessary care, support and supervision.  There is no basis for assuming the parents will complete the necessary services and find one or both of themselves in a position to receive the child into the home.

> The parents failed to utilize the available services and make the necessary efforts to remedy the conditions, which led to intervention by DCS and the Court.

Appellant's App. pp. 30–31. Neither Mother nor Father challenge these findings on appeal. As such, we accept the findings as true. *See In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019). We agree with the juvenile court's determination that these findings demonstrate a reasonable probability that the conditions resulting in Child's removal from Parents' care will not be remedied.

[13] In challenging the sufficiency of the evidence to sustain the termination of their parental rights to Child, Parents acknowledge that they have not completed services but claim that DCS failed to prove that they are unable to provide a stable home for Child. Specifically, they argue that they have housing, Father receives social security benefits, and Mother is looking for employment. They also claim that, while they currently have no bond with Child, DCS failed to prove that they would be unable to establish a bond with Child in the future, if Child were to ever be placed in their care. Parents' claims amount to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## II. Indiana Code Section 31-35-2-4(B)(2)(C)

[14] We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App.

2003).  In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved.  *Id.*  "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children."  *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007).  Furthermore, this court has previously determined that the testimony of the case worker, guardian ad litem ("GAL"), or a CASA regarding a child's need for permanency supports a finding that termination is in the child's best interests.  *Id.* at 374; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[15]  With respect to the best interests of Child, the juvenile court found as follows:

> The child continues to reside in a stable foster home which has indicated both a willingness and ability to adopt the child.  It would be unfair to the child to delay such permanency on the very remote likelihood of parents committing to and completing services.
>
> The Indiana Supreme Court has held that at some point in time a child's right to permanency outweighs a parents ever important right to parent.  The Court finds that in this case, [Child] certainly has a right to permanency.
>
> ****
>
> It is in the best interest of the child and his health, welfare and future that the parent-child relationship between the child and his parents be forever fully and absolutely terminated.

Appellant's App. Vol. II p. 31.  The juvenile court's findings are supported by the record.

[16]     While both parents completed at least some of the initial court-ordered assessments, neither completed the necessary services or made any progress towards reunification.  DCS had continued concerns of substance abuse by and domestic abuse between Parents.  In addition, FCM Passmore testified that she believed that termination of Parents' parental rights was in Child's best interests, explaining:

> [Child] needs consistency.  He needs treatment and care.  He's seventeen months old, he needs his basic needs met of food, clothing, shelter, education and medical.  [Child] does participate in First Step Services.  He receives physical therapy as well as speech.  And he needs a home that is free from domestic violence as well as substance abuse.
>
> ****
>
> [Child] needs a permanent, loving home.  He's been in the home for seventeen months.  He appears very bonded with the foster parents.  There's never been any safety concerns in regards to care and treatment and he's thriving.

Tr. pp. 16–17.  FCM Passmore's testimony coupled with Parents' failure to make any progress toward reunification is sufficient to sustain the juvenile court's findings regarding Child's best interests.

[17]     The judgment of the juvenile court is affirmed.

Altice, J., and Robb, J., concur.