# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 03 2020, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT C.M.

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert L. Yates
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of A.L. and L.M. (Minor Children)

and

C.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 3, 2020

Court of Appeals Case No. 19A-JT-2085

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause Nos.
40C01-1903-JT-6
40C01-1903-JT-7

**Bradford, Chief Judge.**

# Case Summary

[1] C.M. ("Father") is the biological parent of A.L. (born July 28, 2014) and L.M. (born September 25, 2015), (collectively "the Children"). In May of 2017, the Children were adjudicated to be children in need of services ("CHINS") due to neglect and Father's substance abuse. In March of 2019, the Department of Child Services ("DCS") petitioned for the termination of Father's parental rights. On August 8, 2019, the juvenile court ordered that Father's parental rights to the Children be terminated. Father contends that the juvenile court's termination of his parental rights was clearly erroneous. We affirm.[1]

# Facts and Procedural History

[2] On September 25, 2016, the Children were removed from Father's care after he was arrested following a traffic stop. At the time of the traffic stop, Father appeared to be under the influence of illegal substances, the Children were not

---

[1] Mother passed away on September 27, 2018.

properly restrained, and illegal substances and paraphernalia were discovered within the Children's reach. The State charged Father with narcotic-drug possession, unlawful possession of a syringe, marijuana possession, paraphernalia possession, and neglect of a dependent, of which Father ultimately pled guilty to Level 6 felony narcotic-drug possession and Level 6 felony neglect of a dependent. On September 27, 2016, DCS petitioned for the Children to be adjudicated CHINS. In October of 2016, Father was charged with Class B misdemeanor public intoxication, after he overdosed in the summer of 2016 in the presence of the Children and had to be revived by Narcan, to which he later pled guilty. On May 10, 2017, the juvenile court adjudicated the Children to be CHINS. That same month, Father was arrested and charged with, *inter alia*, Class A misdemeanor domestic battery after he attacked his father, to which he later pled guilty. In June of 2017, Father screened positive for methamphetamine. In August of 2017, Father was charged with and later pled guilty to Level 6 felony battery resulting in moderate bodily injury, after he broke another individual's leg. On August 17, 2017, the juvenile court held a dispositional hearing in the CHINS matter and ordered Father to complete parenting and substance-abuse assessments and follow all recommendations, submit to random drug screens, maintain safe and stable housing, maintain a legal and stable source of income, notify DCS of any arrests or criminal charges, contact DCS weekly, follow any terms of probation, refrain from committing acts of domestic violence and consuming illegal substances, and attend all visitation.

[3] In February of 2018, Father was charged with and later pled guilty to Class A misdemeanor resisting law enforcement, after he resisted arrest and had to be tasered by police. In January of 2019, Father completed an intensive-outpatient program ("IOP"). That same month, Father was evicted from his residence and began living in various hotels throughout the remainder of this matter. In March of 2019, police officers discovered heroin in Father's vehicle, and he admitted that he had begun using heroin again. As a result, Father was charged with Level 6 felony unlawful possession of a syringe, Level 6 felony narcotic-drug possession, Level 6 felony maintain a common nuisance, and Class C misdemeanor paraphernalia possession, which were still pending at the conclusion of this matter. On March 6, 2019, DCS petitioned for the termination of Father's parental rights. On April 25, 2019, Family Case Manager Ida Prange ("FCM Prange") spoke to Father over the telephone, and he was slurring his words. On June 4, 2019, the juvenile court held an evidentiary hearing regarding DCS's termination petition. Father completed a thirty-day detoxification program less than a week before the evidentiary hearing.

[4] At the evidentiary hearing, Jeannie Arbuckle, the visitation supervisor, testified that Father's last visit with the Children was on April 11, 2019. Arbuckle also stated that "in January [Father] only made three (3) out of five (5) visits, in February he made three (3) out of four visits, in March he made three (3) out of four (4) visits and then in April he was down to one (1) out of four (4)." Tr. Vol. II p. 45.

FCM Prange testified that she had no verification to establish that Father had successfully addressed his substance-abuse issues or was drug free. FCM Prange also testified that she was not able to recommend unsupervised visitation or placement with Father due to his drug use, legal issues, and lack of stable housing. FCM Prange believed it was in the Children's best interests that Father's rights be terminated. Guardian *ad Litem* Merri Eder ("GAL Eder") also recommended that Father's parental rights be terminated.

On August 8, 2019, the juvenile court ordered the termination of Father's parental rights. In concluding that it was in the Children's best interests, the juvenile court found that:

> 1. Father has failed to address his substance abuse issues.
>
> 2. Father has failed to complete the majority of services ordered by the Court.
>
> 3. Father has been incarcerated off and on throughout this case for various violent and drug related crimes. Father was most recently arrested with heroin mere months before this Termination hearing.
>
> 4. Father has not enhanced his ability to safely and appropriately parent his children and is unable to provide his children with a safe, stable, and appropriate home.
>
> 5. GAL Eder and FCM Prange do not believe it would be in the children's best interest to give Father more time to complete services and attempt to reunify with them. Father has already had 31 months to complete services (over twice the required time allotted for TPR proceedings) and he has failed to make the necessary efforts to facilitate reunification.

Appellant's App. Vol. II pp. 54–55.

# Discussion and Decision

[7]     The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities, their rights may be terminated. *Id.*

[8]     In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences

drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[9] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence "that termination is in the best interests of the [Children.]" Ind. Code § 31-35-2-4(b)(2). In challenging the sufficiency of the evidence to sustain the termination of his parental rights, Father contends that the juvenile court erred by concluding that termination of his parental rights was in the Children's best interests.[2]

[10] We are mindful that, in determining what is in the best interests of the child, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have

---

[2] Father does not dispute the juvenile court's determination that (1) the Children had been removed from Father's care for at least six months under a dispositional degree, (2) the conditions that resulted in the Children's removal will not be remedied and continuation of parent–child relationship poses a threat to the Children's well-being, and (3) there was a satisfactory plan for the care and treatment of the Children, all required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

previously held that recommendations from the FCM and court-appointed special advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

[11] Here, the juvenile court determined that the conditions that resulted in the Children's removal would not be remedied. Father does not challenge this finding on appeal; therefore, we accept that finding as true. *See In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019). Moreover, FCM Prange and GAL Eder both recommended the termination of Father's parental rights. While coupling that testimony with the juvenile court's unchallenged determination that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Father's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[12] Throughout the nearly three years that this matter was proceeding, Father was unable to maintain sobriety or refrain from committing crimes. Father screened positive for methamphetamine and admitted to using heroin again just a few months prior to the evidentiary hearing. Moreover, Father has been convicted of violent and drug-related crimes in five different criminal cases throughout this matter and had another criminal case pending at the time of termination, in which he was charged with drug-related crimes. Father has also been inconsistent in visitation, failed to complete services, and is unable to maintain

stable housing. Considering the totality of the evidence, Father has failed to establish that the juvenile court's determination that termination was in the Children's best interests was clearly erroneous.

[13] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.