## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 21 2020, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent–Child Relationship of K.J. and L.J. (Minor Children) | October 21, 2020 |
| and | Court of Appeals Case No. 20A-JT-974 |
| V.S. (Mother), | Appeal from the Wabash Circuit Court |
| *Appellant-Respondent,* | The Honorable Robert R. McCallen III, Judge |
| v. | Trial Court Cause Nos. 85C01-1909-JT-18 85C01-1909-JT-19 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Bradford, Chief Judge.**

# Case Summary

V.S. ("Mother") is the biological mother of K.J. (born April 23, 2015) and L.J. (born March 2, 2016) (collectively, the "Children").[1] In October of 2017, the Children were adjudicated to be children in need of services ("CHINS") due to Mother's substance abuse. In September of 2019, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights to the Children. On April 2, 2020, the juvenile court ordered that Mother's parental rights to the Children be terminated. Mother contends that the juvenile court's termination of her parental rights was clearly erroneous. Because we disagree, we affirm.

# Facts and Procedural History

In September of 2017, DCS petitioned for the Children to be adjudicated CHINS due to Father's and Mother's substance abuse, and the Children were removed from their parents' care. On October 24, 2017, the juvenile court adjudicated the Children to be CHINS. On December 5, 2017, the juvenile court entered its dispositional order, ordering Mother to, *inter alia*, maintain contact with DCS, enroll in programs recommended by the Family Case

---

[1] Father consented to the termination of his parental rights and does not participate in this appeal.

Manger ("FCM"), maintain safe and suitable housing, refrain from using illegal substances or consuming alcohol, complete a substance-abuse assessment and follow all recommendations, submit to random drugs screens, and attend all visitation with the Children. On September 4, 2019, DCS petitioned for the termination of Mother's parental rights to the Children. The juvenile court held a factfinding hearing regarding DCS's termination petitions over several days on October 24, 2019, and January 28, and February 18, 2020.

At the hearing, FCM Cora Kennedy testified that Mother had never completed a substance-abuse treatment program and her participation in drug screening throughout this matter had been sporadic. FCM Kennedy also testified that she would not recommend the Children be returned to Mother's care because "[t]here's been very frequent incarceration, continued substance use, regardless of the intervention put in place," and there were still issues that Mother has not "taken care of regarding herself and her own personal needs that lead to substance use. She has not been able to maintain housing at all due to her incarceration." Tr. Vol. III pp. 25–26. FCM Kennedy stated that DCS believed the best outcome for the Children was adoption, especially given Mother's substance abuse. Regarding Mother's substance abuse, FCM Kennedy noted that "we've gone down several different avenues for treatment, different styles of substance use treatment, that have not been yet successful … DCS does not need to be involved throughout [the Children's] entire life until she is able to find what works for her." Tr. Vol. III p. 28.

[4]     Court-appointed special advocate Kiley Gunter ("CASA Gunter") also testified at the hearing, stating that she believed it was in the Children's best interests that Mother's parental rights be terminated. Her belief was based on the fact that "this case has been going on for too long. The children need permanency. And with mother being just in and out of incarceration and working through substance abuse, I have not been able to believe that they can achieve permanency through mother right now at this time." Tr. Vol. III p. 48.

[5]     The records of Mother's drug screen results were admitted into evidence, which indicated that she had tested positive on the following dates for illegal substances:

- January 6, 2017—alcohol metabolite

- January 17, 2017—THC

- January 19, 2017—THC

- February 18, 2017—THC

- September 8, 2017—THC

- June 6, 2018—fentanyl, codeine, and morphine

- January 29, 2019—buprenorphine and norbuprenorphine

- February 4, 2019—buprenorphine and norbuprenorphine

- February 5, 2019—buprenorphine and norbuprenorphine

- February 11, 2019—buprenorphine and norbuprenorphine

- February 12, 2019—buprenorphine and norbuprenorphine

- June 27, 2019—amphetamine, methamphetamine, norfentanyl, and morphine

- July 2, 2019—amphetamine and methamphetamine

- July 5, 2019—amphetamine and methamphetamine

- July 8, 2019—amphetamine and methamphetamine

- July 9, 2019—amphetamine, methamphetamine, and THC

- July 11, 2019—amphetamine, methamphetamine, and THC

- August 14, 2019—amphetamine and methamphetamine

- August 15, 2019—amphetamine, methamphetamine, and norfentanyl

[6] Following the factfinding hearing, the juvenile court made the following findings of fact:

> On February 2, 2018, the first review hearings in the underlying CHINS cases were held. Both parents appeared in person and by counsel.

> By then, [Mother] had been charged with Unlawful Possession of a Syringe and Maintaining a Common Nuisance, both Level 6 Felonies, as well as Possession of Paraphernalia, a Class C Misdemeanor, in Cause No. 85D01-1801-F6-102. On April 20, 2018, she pled guilty to the Unlawful Possession of a Syringe charge. She was sentenced to 1 ½ years with all but time served suspended and she was placed on formal probation. On May 30, 2018, a petition to revoke [Mother's] probation was filed alleging she tested positive for methamphetamine and heroin and that she committed another offense. The other offense was Unlawful

Possession of a Syringe, a Level 6 Felony (Cause No. 85D01-1805-F6-564).

On June 1, 2018, permanency hearings were held in the underlying CHINS cases. [Mother] appeared in person, in the custody of the Wabash County Sheriff, and by counsel. [Father] did not appear. During the permanency hearings, the Court granted DCS' request to file concurrent plans of termination of parental rights. Orders approving the concurrent plan were entered on June 13, 2018.

On June 19, 2018, a second petition to revoke [Mother's] probation was filed alleging she again tested positive for methamphetamine. On July 6, 2018, a third petition to revoke [Mother's] probation alleging the same allegations as the second petition was filed. In that case, [Mother] was conditionally released to the Serenity House, which she described as a half-way house, in Warsaw, Indiana.

On September 6, 2018, a fourth petition to revoke [Mother's] probation was filed alleging that [Mother] had been expelled from the Serenity House for failing to follow the rules and that she had not notified probation of a change of address. A warrant for her arrest was issued. On September 17, 2018, [Mother] was arrested. [Mother] admitted to not seeing her children between September 6, 2018, and the date of her arrest, as she was evading the warrant.

On December 10, 2018, both of [Mother's] pending criminal cases were resolved by a combined plea agreement. In Cause No. 85D01-1801-F6-102, [Mother] admitted to the second and third petitions to revoke her probation and the first and fourth were dismissed. In Cause No. 85D01-1805-F6-564, [Mother] pled guilty to Unlawful Possession of a Syringe, a Level 6 Felony. Sentencing in each case was taken under advisement and [Mother] was ordered to enter and successfully complete the Wabash County Drug Court Program.

On January 8, 2019, the DCS filed Verified Petitions for Involuntary Termination of the Parent-Child Relationship in Cause Nos. 85C01-1901-JT-2 & 3. By this time, [Mother] was active in drug court.

On January 11, 2019, a review hearing was held in the underlying CHINS cases, [Mother] appeared in person and by counsel.

On June 7, 2019, due to [Mother's] compliance with drug court and her sobriety, the petitions to terminate parental rights were dismissed.

On July 12, 2019, permanency hearings were held in the underlying CHINS cases. [Mother] appeared in person and by counsel. [Father] also appeared in person. [Mother] was still participating in drug court.

On or about August 27, 2019, petitions to terminate [Mother's] participation in drug court were filed in her pending criminal cases. She was thereafter terminated, as unsuccessful, from drug court.

On September 4, 2019, these proceedings were initiated by the filing of new petitions to terminate parental rights.

On or about October 29, 2019, a disposition hearing was held in Cause No. 85D01-1801-F6-102. [Mother] was ordered to serve 16 months of her previously suspended sentence, consecutive to Cause No. 85D01-1805-F6-564. She was authorized to serve her time on electronic home detention (EHD). Sometime during her EHD placement, [Mother] was also participating in Medically Assisted Treatment (MAT) to help curb her appetite for illegal drugs. On December 13, 2019, a petition was filed to revoke [Mother's] participation in EHD and a warrant was issued. That ended her participation in MAT.

Similarly, on or about October 29, 2019, [Mother] was sentenced in Cause No. 85D01-1805-F6-564. She was sentenced to 2 years

with 1 ½ years suspended. As a term of her probation she was ordered to enter and complete all requirements of the MAT program. As mentioned above, MAT was terminated. Also, on December 13, 2019, a petition to revoke [Mother's] EHD was filed. She remains incarcerated while that petition is pending. A pretrial conference is scheduled for March 30, 2020.

On January 10, 2020, a periodic review hearing was held in the underlying CHINS cases. [Mother] appeared in person, in the custody of the Sheriff, and by counsel. [Father] failed to appear. Again, [Father's] attorney had withdrawn. Order[s] on Periodic Review were entered that same date. As the orders reflect: [Mother and Father] have not complied with the case plans; neither have enhanced their ability to fulfill their parental obligations; the DCS has made reasonable efforts to reunify or preserve the family; and, placement outside the home of the parents should continue.

[Mother] has been to a half-way house. [Mother] has participated in a drug court program. [Mother] has received medically assisted treatment. All efforts ended unsuccessfully. She continued to use illegal drugs.

Appellant's App. pp. 22–24 (footnotes omitted). On April 2, 2020, the juvenile court terminated Mother's parental rights to the Children.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "Though it's been oft-stated, it bears repeating: the parent–child relationship is one of the most valued relationships in our culture." *Matter of M.I.*, 127 N.E.3d 1168,

1170–71 (Ind. 2019) (internal quotations and citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities, their rights may be terminated. *Id.*

[8]     In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied.* We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.* When the juvenile court's findings are unchallenged on appeal, we accept them as true. *See In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019).

[9]     Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]
>>
>> [and]
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[2] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother contends that the juvenile court erred by concluding that (1) there is a reasonable probability that the conditions that resulted in the Children's removal would not be remedied, (2) the continuation of the parent–child relationship posed a threat to the

---

[2] It is not disputed that the Children had been removed from Mother for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Children, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

Children's well-being, and (3) termination of her parental rights was in the Children's best interests.

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[10]     Mother contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in the Children's removal would not be remedied or that the continued parent–child relationship posed a threat to the Children's well-being. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was only required to establish one of the circumstances. We choose to first address Mother's contention that the juvenile court erred by concluding that the conditions which resulted in the Children's removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal … will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (cleaned up).

[11] The condition that led to the Children's removal was Mother's substance abuse. We conclude that DCS produced ample evidence to establish a reasonable probability that this condition would not be remedied. Throughout this matter, Mother has failed to maintain sobriety and has consistently chosen a life of substance abuse over parenting her children. Although Mother's participation in drug screening was sporadic from January of 2017 to August of 2019, she tested positive eighteen times for myriad illegal substances, including THC, buprenorphine, norbuprenorphine, fentanyl, norfentanyl, amphetamine, methamphetamine, codeine, and morphine. Because of her substance abuse, Mother was convicted on two different occasions for Level 6 felony Unlawful Possession of a Syringe and was incarcerated at the time her parental rights were terminated. Mother violated the terms of her probation multiple times and was unsuccessful at completing programs designed to curb her substance abuse, including the Serenity House, medically assisted treatment, Wabash County Drug Court, and home detention. Given Mother's consistent substance abuse and interactions with the criminal justice system, the juvenile court did not clearly err by concluding that the conditions that led to the Children's removal would not be remedied.[3]

---

[3] Because we have concluded that the juvenile court did not err in this regard, we need not address Mother's contention that there was insufficient evidence to conclude that the continued parent—child relationship posed a threat to the Children's well-being.

# II. Indiana Code Section 31-35-2-4(b)(2)(C)

[12] Mother contends that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights was in the Children's best interests. We are mindful that, in determining what is in the best interests of the children, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until the children are irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and CASA to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the children's best interests. *In re J.S.*, 906 N.E.2d at 236.

[13] FCM Kennedy testified that she believed adoption was the best outcome for the Children. CASA Gunter testified that she believed termination of Mother's parental rights was in the Children's best interests. While this testimony coupled with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Mother's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[14]    Mother has consistently failed to address her substance-abuse issues throughout this matter, and our review of the record does not persuade us that she is serious about addressing them in the near future. Due to periods of incarceration throughout this matter, Mother has also failed to maintain safe and suitable housing. Moreover, the Children are doing well in their current placement, especially L.J., who has special medical needs due to her heart transplant. Considering the totality of the evidence, Mother has failed to establish that the juvenile court's determination that termination of her parental rights was in the Children's best interest was clearly erroneous.

[15]    The judgment of the juvenile court is affirmed.

Najam, J., and Mathias, J., concur.