## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2020, 12:10 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katharine Vanost Jones
Evansville, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of: A.S. (Minor Child), <br><br> and <br><br> E.S. (Father), <br> *Appellant-Respondent,* <br><br>      v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner.* | February 13, 2020 <br><br> Court of Appeals Case No. 19A-JT-2068 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Renee Allen Ferguson, Magistrate <br><br> Trial Court Cause No. 82D04-1904-JT-612 |

**Tavitas, Judge.**

# Case Summary

[1]   E.S. ("Father") appeals from the termination of his parent-child relationship with A.S. (the "Child").  We affirm.

# Issues

[2]   Father raises two issues on appeal, which we restate as follows:

> I.   Whether the trial court abused its discretion in denying Father's motion for a continuance.
>
> II.  Whether sufficient evidence supports the termination of Father's parental rights.

# Facts

[3]   Father has a significant record of substance abuse, criminal conduct, and incarceration dating back to 2012.[1]  Father was incarcerated for much of the underlying action. Father and B.S. ("Mother")[2] are the parents of the Child

---

[1] In June 2012, Father pleaded guilty to burglary, a Class C felony, and theft, a Class D felony.  In October 2014, Father was charged with possession of a controlled substance, a Level 6 felony, and was placed under probation supervision.  In June 2016, Father pleaded guilty to dealing in a look-a-like substance, a Level 5 felony; possession of methamphetamine, Level 5 felony; possession of a syringe, Level 6 felony; resisting law enforcement; and a traffic violation.

[2] Mother voluntarily relinquished her parental rights to the Child and is not a party to this appeal.

(born in October 2017). At the time of the Child's birth, Mother was the custodial parent. Father was incarcerated and had not yet met the Child.

[4] On October 31, 2017, the Vanderburgh County Office of the Department of Child Services ("DCS") received an allegation of substance abuse by Mother. Days later, Mother tested positive for amphetamine, methamphetamine, benzodiazepines, and Buprenorphine, and DCS removed the Child from Mother's care. At the time, Father and Mother had two older children in foster care.[3] DCS placed the Child in the same foster placement as her siblings. On November 15, 2017, the trial court adjudicated the Child as a CHINS.

[5] On August 28, 2018, Father was released to the drug court re-entry program. Thereafter, as required by the trial court's dispositional order, Father contacted DCS and met with family case manager ("FCM") Nate Austin. Father expressed his willingness to engage in supervised visitation, drug screens, and parenting education. FCM Austin instructed Father to refrain from drug and alcohol use and to secure employment and stable housing. Father also met the Child for the first time and participated in a two-hour supervised visit with the Child. The Child was ten months old.

[6] On September 4, 2018, case manager Dana Allyn filed a petition to revoke Father's placement in the drug court re-entry program. Father appears to have been arrested, and on September 20, 2018, Father was released from jail. On or

---

[3] Father's parental rights to the two older children were terminated in separate proceedings.

about October 6, 2018, Father refused a drug test, in violation of the program's rules, and self-reported his use of methamphetamine and Suboxone. On October 7, 2018, Father failed to report to facility check-in. On October 8, 2018, case manager Allyn filed a petition to revoke Father's drug court placement. Father "was AWOL" until his arrest on October 29, 2018, for dealing in a look-alike substance. Exhibits Vol. I p. 214. On October 30, 2018, the program moved to revoke Father's placement. On February 20, 2019, Father was ordered to the DOC to serve his previously-suspended sentence.

[7] On April 1, 2019, DCS filed a petition to terminate Father's parental rights. On May 28, 2019, Father moved to continue the fact-finding hearing beyond January 2020, when Father expected to be released from prison, to give Father the "opportunity to be released from incarceration, participate in services and be reunified with his child." Tr. Vol. II p. 5. The trial court denied the motion for continuance.

[8] On June 5, 2019, the trial court conducted the fact-finding hearing on DCS's petition for termination of Father's parental rights. Father appeared telephonically from jail. On August 6, 2019, the trial court entered its order, which contained findings of fact and conclusions thereon, and terminated Father's parental rights. Father now appeals.

## Analysis

[9] The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re*

*K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's best interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *In re K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

## I.     *Continuance*

[10]    Father argues that he was "prejudiced and detrimentally harmed by the court's denial of a continuance until [Father] [wa]s released from prison [in January 2020, at the latest] and able to participate in services." Father's Br. p. 8. "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014). An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion; however, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006) (internal citations omitted), *trans. denied.*

[11]     Father relies upon our Supreme Court's discussion of the absence of a parent from termination proceedings in *K.W.*  In *K.W.*, the mother was incarcerated and sought a continuance of the termination fact-finding proceedings until after her release date in approximately two weeks.  The trial court denied the continuance, conducted the fact-finding hearing in the mother's absence, and terminated the mother's parental rights.  After we affirmed, our Supreme Court granted transfer and vacated the termination of the mother's parental rights, deeming the proceedings fundamentally unfair, prejudicial, and violative of due process.

[12]     In analyzing the mother's claim in *K.W.*, our Supreme Court employed the eleven-factor test it adopted in *In Re C.G., Z.G. v. Marion Cnty. Dep't of Child Servs.*, 954 N.E.2d 910, 922 (Ind. 2011).  The *K.W.* Court acknowledged the distinctions between *K.W.* and *C.G.*, but found that the *C.G.* test "illuminate[d] [] review of whether [the mother] showed good cause why her motion [for continuance] should be granted or if the denial was otherwise 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom.'"  *Id.*

[13]     The *C.G.* factors are as follows:

> (1) [t]he delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her

attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the [e]ffect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

*Id.*

[14] We initially note that here, unlike the circumstances in *K.W.*, Father attended and participated fully in the fact-finding hearing via telephonic means. We address the pertinent[4] *C.G.* factors when faced with a motion to continue a termination fact-finding hearing. Factor (1)—delay from granting Father's desired continuance—is not insignificant, albeit difficult to quantify.[5] A continuance to a date after Father's release from prison could allow Father to bond with the Child, participate in services, and work on parenting skills.

[15] Regarding factor (2), the need for an early determination of the matter, the record does not indicate any specific urgency, beyond a child's general need for

---

[4] The instant facts differ from *K.W.* in that Father appeared telephonically for the fact-finding. Father's participation renders Factors, (5), (6), (8), (9), (10), and (11) inapplicable.

[5] At the time of the scheduled fact-finding hearing, the Child was nearly two years old and had met Father once in a two-hour supervised visit.

permanency. As to factor (3), the elapsed time during which the proceeding has been pending—the Child was removed from Mother in November 2017, when the Child was one month old. By the time of the June 2019 fact-finding hearing, the Child was nearly two years old and was firmly bonded in a pre-adoptive placement with her siblings.

[16] As to factor (4)—the best interests of the Child consideration—the record is clear that Father and the Child were not bonded; Father was incarcerated for the majority of the Child's life and, upon his release from prison, Father returned to incarceration soon after his first—and only—visit with the Child. Regarding factor (7)—the effect of Father's inability to participate in services on his likelihood to prevail on the merits—we find that Father's failure to participate in services has a significant negative impact on his likelihood to prevail on the merits. The record reveals that Father has not been denied access to services but, rather, he has squandered such opportunities.

[17] Our weighing of the applicable *C.G.* factors does not reveal good cause for the granting of Father's requested continuance. It cannot be overstated that Father was granted the opportunity to participate in services upon his release from prison in Fall of 2018. Father's decision to resume his drug use and criminal activity resulted in his return to prison, which thwarted DCS's ability to initiate services. Under these circumstances, the Child's need for permanency weighs against Father's need for a continuance. The trial court's denial of Father's motion for a continuance was not clearly against the logic and effect of the

circumstances before the trial court and did not render the proceedings fundamentally unfair, prejudicial, or contrary to standards of due process.

## II. *Conditions of Removal*

[18] Father also argues that insufficient evidence supported the termination of his parental relationship with the Child. When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re. I.A.,* 934 N.E.2d 1127, 1132 (Ind. Ct. App. 2010). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

[19] Pursuant to Indiana Code Section 31-35-2-8(c), "The trial court shall enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)."[6] Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a

---

[6] Indiana Code Sections 31-35-2-8(a) and (b), governing termination of a parent-child relationship involving a delinquent child or CHINS, provide as follows:

   (a) Except as provided in section 4.5(d) of this chapter, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.

   (b) If the court does not find that the allegations in the petition are true, the court shall dismiss the petition.

termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[20] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (A) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (B) that termination is in the best interests of the child; and

> (C)     that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[21]     Father challenges only the trial court's determination as to the likelihood that the conditions that resulted in the Child's removal will not be remedied. Father maintains that the trial court terminated Father's parental rights "largely due to [Father's] admission [ ] to a single use of methamphetamine after [Father] had taken the relapse prevention class in prison."[7] Father's Br. p. 14.

[22]     To prove that the conditions that led to the removal of the Child will not be remedied, DCS must establish: (1) what conditions led DCS to place and retain the Child in foster care; and (2) whether there is a reasonable probability that those conditions will not be remedied. *I.A.,* 934 N.E.2d at 1134. When analyzing this issue, courts may consider not only the basis for the initial removal of the Child, but also reasons for the continued placement of the Child outside the home thereafter. *In re A.I.,* 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied.*

---

[7] Although we expect zealous advocacy from counsel, we find that appellant's counsel mischaracterizes the evidence here. We admonish appellant's counsel from taking such liberties in the future.

[23] Courts must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed circumstances. *A.D.S. v. Indiana Dep't of Child Servs.,* 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied.* The parent's habitual patterns of conduct should be evaluated to determine the probability of future neglect or deprivation of the child. *Id.* Factors to consider include a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Courts also may consider services offered to the parent by DCS and the parent's responses to those services. *Id.* DCS is not required to prove a parent has no possibility of changing; it need only establish a reasonable probability that no change will occur. *Id.*

[24] In determining here that the conditions that led to the Child's removal were unlikely to be remedied, the trial court made specific findings. At the fact-finding hearing, FCM Austin testified that: Father "never actually completed" any services because Father relapsed and was incarcerated for a new drug offense; and Father does not have custody of his other children for reasons related to Father's long-running cycle of substance abuse, criminal activity, and incarceration. Tr. Vol. II p. 23. CASA Stephanie Johnson testified that, although Father expressed a desire for reunification, she "do[es] not feel confident that [Father] would participate in the services needed in order to accomplish [reunification.]" *Id.* at 37.

[25] Based on the foregoing, we conclude that DCS proved, by clear and convincing evidence, the allegations in the petition to terminate Father's parental rights.

Father's habitual patterns of conduct—namely, substance abuse, criminal activity, and incarceration—hindered DCS's ability to provide Father with vital services. Father could not maintain sobriety, refrain from committing drug-related crimes, or remain out of jail even when Father faced the potential termination of his parental rights and the prospect of additional prison time. *See Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) ("[E]vidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services demonstrates the requisite reasonable probability that the conditions will not change."); *see In re S.S.*, 120 N.E.3d 605, 612 (Ind. Ct. App. 2019) (affirming trial court's conclusion that conditions that led to the Child's removal were unlikely to be remedied based on the father's "long-running pattern of behavior"). The trial court did not clearly err in concluding that there was a reasonable probability that the conditions that led to the Child's removal were unlikely to be remedied.

## Conclusion

The trial court did not abuse its discretion in denying Father's motion to continue the termination fact-finding hearing. Sufficient evidence supports the termination of Father's parental rights to the Child. We affirm.

Affirmed.

Najam, J., and Vaidik, J., concur.