# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2020, 12:32 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of S.L. (Minor Child)

and

D.K. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

March 13, 2020

Court of Appeals Case No. 19A-JT-2335

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No. 48C02-1902-JT-134

**Bradford, Chief Judge.**

# Case Summary

D.K. ("Mother") is the biological mother of S.L. ("Child"). The Department of Child Services ("DCS") became involved with Mother and Child due to concerns of drug use by Mother. Child was removed from Mother's care and alleged to be a child in need of services ("CHINS") on February 7, 2017. Following the CHINS adjudication, Mother was ordered to complete certain services, but failed to do so. In light of Mother's failure to complete services, DCS eventually petitioned to terminate her parental rights to Child. Following an evidentiary hearing, the juvenile court granted DCS's termination petition. On appeal, Mother challenges three of the juvenile court's findings and contends that DCS failed to present sufficient evidence to support the termination of her parental rights.[1] We affirm.

# Facts and Procedural History

Child was born on August 4, 2002. DCS received two unsubstantiated reports about Mother and Child in the fall of 2016. DCS again became involved with Mother and Child on January 14, 2017, after receiving reports of drug use by Mother. Specifically, Mother was alleged to be using amphetamine,

---

[1] D.L. is Child's biological father. He does not participate in this appeal. As such, we will limit our discussion to facts relevant to the termination of Mother's parental rights to Child.

methamphetamine, opiates, and THC.  Also at this time, DCS received a report that Mother had taken Child's then-thirteen-year-old brother to the emergency room after he made suicidal statements.

[3]     DCS removed Child from Mother's care and filed a petition alleging that Child was a CHINS in Marion County on February 7, 2017.  On March 29, 2017, the juvenile court adjudicated Child to be a CHINS and entered a dispositional order.  In this order, the juvenile court ordered Mother to complete certain services including therapy, home-based case management, random drug screens, and a substance-abuse assessment.  The CHINS case was transferred to Madison County on August 8, 2017.  The permanency plan was changed to adoption on October 24, 2018, after the juvenile court determined that "[i]n the 29 months since the Child had been removed from her home, Mother had made no significant progress [in] remedying the conditions which necessitated the removal of the Child from her care and custody[.]"  Appellant's App. Vol. II p. 9.

[4]     On March 1, 2019, DCS filed a petition to terminate Mother's parental rights to Child.  The juvenile court conducted a two-day evidentiary hearing on May 28 and July 23, 2019.  During this hearing, DCS presented evidence outlining Mother's failure to comply with services, remain drug free, and make any significant progress in improving her ability to provide the necessary care for Child.  Following the conclusion of the evidence, the juvenile court took the matter under advisement.  On September 9, 2019, the juvenile court issued an order terminating Mother's parental rights to Child.

# Discussion and Decision

[5]   The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[6]   In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[7]     In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent–child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

# I. Challenge to Trial Court's Findings

[8]     Mother contends that three of the juvenile court's findings are not supported by the record. Specifically, Mother challenges Findings Numbers 4, 5, and 7, all of which detail procedural facts occurring while the CHINS case was pending in Marion County.[2] In Finding Number 4, the juvenile court found as follows:

> 4.     On February 7, 2017, DCS filed a petition alleging the Child to be a Child In Need of Services under cause number 49D09l-702-JC-000399 because Mother had failed to provide a safe and stable living environment, Mother had an untreated substance abuse problem, Mother had used illegal substances in front of her children, the Child's sibling had multiple hospital stays for suicidal ideation, Mother had demonstrated inappropriate attitudes and behaviors during the sibling's hospital stay that were inconsistent with safe and appropriate parenting, and Father could not be located or otherwise made available to

---

[2] DCS seems to have introduced incomplete copies of the underlying CHINS documents into evidence during the evidentiary hearing. While we conclude in this case that the challenged findings are supported by the record, we believe that the better practice would have been to introduce full, certified copies of all relevant CHINS documents into evidence during the termination proceedings and encourage DCS to do the same.

assume care of the children. The Marion Superior Court authorized the filing of the CHINS Petition on February 7, 2017 and authorized the continued removal of the Child and her sibling from their parents' care.

Appellant's App. Vol. II p. 7. In challenging this finding, Mother argues that the finding is unsupported by the record as the CHINS petition was not part of the record in the termination proceedings. While Mother is correct that the CHINS petition was not included in the record, other evidence in the record, including the testimony of family case manager ("FCM") Marlana Bertram and service provider Deana Heller and certain other documents, establishes the relevant facts contained therein. The juvenile court's finding is therefore supported by the evidence.

[9]     In Finding Number 5, the juvenile court found as follows:

> 5.     On March 29th, 2017, the CHINS court conducted a fact-finding hearing on the CHINS petition. This Court finds the following facts and reasonable inferences from this hearing for purposes of these termination proceedings:
>     a.     Mother admitted that the Child and her sibling were CHINS, that Mother required the assistance of DCS to maintain a safe and stable home free from substance abuse, and that the course of intervention of the court was necessary to ensure the safety and well-being of the children.
>     b.     Mother waived her right to a pre-dispositional report, the CHINS Court conducted a dispositional hearing, and the court issued a Parental Participation Order that Mother participate in home based therapy, home based case management, random drug screens, and a substance abuse assessment if she were to test

positive for any illicit substances.
    c.      The Child was adjudicated a Child in Need of
Services.
    d.      The Child remained out of Mother's custody
and care.

Appellant's App. Vol. II p. 7.  Mother challenges the portion of this finding

indicating that she admitted that Child was a CHINS and waived her right to a

pre-dispositional report.  However, whether Mother admitted that Child was a

CHINS or waived her right to a pre-dispositional report is irrelevant given the

evidence establishing that Child was subsequently adjudicated to be a CHINS

and, following a dispositional hearing, Mother was ordered to complete the

services listed.

[10]    In Finding Number 7, the juvenile court found as follows:

    7.      On July 5th, 2017, the CHINS Court conducted a periodic
    review hearing.  This Court now finds the following facts and
    reasonable inferences from this hearing for purposes of these
    termination proceedings:
        a.      Conditions still required the Child's removal
        from the home.
        b.      Mother agreed to reduced visitation time with
        the Child due to ongoing tensions between the two of
        them.
        c.      Mother was continuing to test positive for the
        use of opiates.
        d.      Father resided in Louisiana.  He agreed to
        contact the Louisiana DCS in order to participate in
        random drug screens and an evaluation of his home
        to determine the appropriateness of placement of the
        Child in his care.

e.     The Child was having significant behavioral issues, including the use of marijuana and statements regarding self-mutilation. The parties agreed to continued drug screens and a psychological evaluation of the Child.

Appellant's App. Vol. II p. 8. Mother challenges the portion of this finding indicating that she agreed to reduced visitation time with Child due to ongoing tension between her and Child. Service provider Allie Raveed testified that Mother's visitation with Child was reduced and eventually stopped at Child's request due to inappropriate behavior by and tension with Mother. Whether Mother agreed to the reduced visitation is irrelevant given the evidence that Mother's visitation with Child was in fact reduced due to inappropriate behavior by Mother and tensions between Child and Mother.

[11] For the reasons set forth above, we conclude that the challenged findings are not clearly erroneous. In any event, we note that Mother only challenged three of the juvenile court's twenty-nine factual findings. The twenty-six unchallenged factual findings must be accepted as correct, *see Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992), and we may affirm judgment of the juvenile court if the court's unchallenged findings support the its conclusions. *See In re Termination of Parental Rights of S.S.*, 120 N.E.3d 605, 611 (Ind. Ct. App. 2019). Upon review, we conclude that the unchallenged findings support the juvenile court's conclusions thereon as discussed below.

## II. Sufficiency of the Evidence

[12] Mother also contends that the evidence is insufficient to sustain the termination of her parental rights to Child. In order to support the termination of Mother's parental rights to Child, DCS was required to prove, *inter alia*, the following:

> (B) that one (1) of the following is true:
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child.

Ind. Code § 31-35-2-4(b)(2). Mother claims that DCS failed to present sufficient evidence to prove these subsections by clear and convincing evidence.

## A. Indiana Code Section 31-35-2-4(b)(2)(B)

[13] It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find that one of the conditions listed therein has been met. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines that one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other factors listed

in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882. DCS does not allege that Child has been adjudicated CHINS on two separate occasions. As such, DCS had to prove either that (1) the conditions resulting in removal from or continued placement outside Mother's home will not be remedied or (2) the continuation of the parent–child relationship poses a threat to Child.

[14] The juvenile court determined that the evidence established a reasonable probability that the conditions that resulted in Child's removal and continued placement outside Mother's care would not be remedied. When making a determination as to whether the conditions leading to placement outside a parent's care are likely to be remedied, juvenile courts "should judge a parent's fitness at the time of the termination hearing, considering any change in conditions since the removal." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007). "The trial court can also consider the parent's response to the services offered through the DCS." *Id.* "'A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change.'" *Id.* (quoting *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*).

[15] In determining that the conditions for placement outside Mother's care would not be remedied, the juvenile court noted that after Child was found to be a CHINS, Mother was ordered to participate in home-based therapy, home-based

case management, and random drug screens. She was also ordered to complete a substance-abuse assessment and all recommended services. With respect to Child's ongoing placement outside Mother's care, the juvenile court found as follows:

> a. Mother has failed to adequately participate in reunification services designed to overcome her mental health, chronic instability, and substance abuse issues. Mother has been offered multiple opportunities to address these concerns, including multiple assessments, individual and group therapy, home based case management, substance abuse treatment, and drug screens. Mother has disregarded these opportunities by denying that she has a problem at all, denying the accuracy of screen results, and failing to appear for scheduled and rescheduled service provider appointments. Mother also failed to cooperate and communicate with service providers, including her frequently relocating without contacting these parties resulting in the disruption of all efforts to engage her in reunification services.

> b. Mother's substance abuse has not abated. Mother provided a copious history of positive screens for multiple different illegal controlled substances, spanning multiple years. Mother alleged during the CHINS proceeding that she sought treatment for her substance abuse with a non-DCS referred provider, but failed to provide proof of this treatment or to sign releases so that other parties could obtain this proof. Further, Mother continued to test positive after these alleged periods of treatment, demonstrating that either the treatment was not actually or meaningfully undertaken or was otherwise ineffective in resolving the problem. The Court notes that Mother cannot adequately provide necessary supervision and oversight of any of her children while engaging in substance abuse.

> c. While the allegations at the outset of the CHINS matter did not include mental health concerns beyond Mother's

substance abuse, it has become clear that her substance abuse and instability are intertwined with significant mental health concerns. Mother has been afforded multiple opportunities to identify and address these concerns, but has persistently avoided meaningful engagement with such services, accepting responsibility for those failures to pursue treatment, and acknowledging the consequences of her behaviors for the Child.

Appellant's App. Vol. II pp. 15–16.

[16] In support of its findings, the juvenile court pointed to evidence which demonstrates that Mother has made little or no progress in remedying the conditions which have necessitated the Child's ongoing placement outside of her care. Specifically, Mother has exhibited continued issues with substance abuse, housing and financial instability, and mental health. Mother consistently failed to engage with services and numerous services were closed out unsuccessfully due to Mother's non-compliance. Further, while Mother participated in random drug screens, the results of these screens demonstrated a persistent pattern of ongoing substance abuse. Mother failed to maintain stable housing and her frequent relocations resulted in multiple service disruptions and frequently hindered her progress in improving her parental abilities. We agree with the juvenile court's determination that the evidence demonstrates a reasonable probability that the conditions resulting in Child's removal from or continued placement outside Mother's care will not be remedied.

[17] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother claims that DCS failed to verify whether her positive

drug screens could have possibly resulted from prescribed medications, asserting that at least one DCS witness "seemed quite disinterested in confirming or denying [Mother's] claimed health problems." Appellant's Br. p. 10. Mother also suggests that some of the positive screens might not "necessarily represent daily use but instead be carryover results of single prior usages." Appellant's Br. p. 11. If so, the evidence might have "improperly exaggerate[d] her problem." Appellant's Br. p. 11. Mother further claims that "[t]here were no findings on the effect of the levels of drugs shown to be present in the positive screens had on [her] ability to function properly as a parent. Without such [a] determination[,] the use of drugs should not be a proper basis for termination of parental rights[.]" Appellant's Br. p. 14. Mother's claims in this regard amount to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

[18]     During the underlying proceedings, Mother reported to service provider Ashley Galloway-Stafford that she and Child were "not close" and "that she didn't have [a]n overt desire to be close with her." Tr. p. 75. On appeal, she acknowledges that she "has made mistakes in the past" and admitted that she "will never be mistaken for June Clever [sic] or any other situation comedy mother from the 50's or 60's." Appellant's Br. pp. 13, 14. She claims, however, that "[t]here was no basis … to conclude that any drug abuse problem [she had] had an ongoing disabling effect on her ability to parent." Appellant's Br. p. 14. For the reasons stated above, we disagree.

## B. Indiana Code Section 31-35-2-4(b)(2)(C)

[19] We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.* "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *Lang*, 861 N.E.2d at 373. Furthermore, this court has previously determined that the testimony of the case worker, guardian *ad litem* ("GAL"), or a CASA regarding a child's bests interests supports a finding that termination is in the child's best interests. *Id.* at 374; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[20] In finding that termination of Mother's parental rights was in Child's best interests, the juvenile court found as follows:

> [Child]'s DCS case manager and CASA have both testified that termination of the parent-child relationship and adoption[3] of the child are in the child's best interests. The Court agrees with these opinions, and now accepts and adopts them as its own finding of

---

[3] The record reflects that the DCS plan is for maternal grandmother to adopt Child and maternal grandmother stands ready to do just that.

fact in these proceedings, supported additionally by [Mother's] unremedied parenting deficiencies[.]

Appellant's App. Vol. II p. 16.

[21] CASA Danielle Bell testified that at the time of the termination hearing, Child was "doing phenomenal." Tr. p. 81. CASA Bell further testified that since being placed with maternal grandmother, Child had done really well in therapy, was no longer self-harming, was responding well to medication for anxiety and depression, and her performance in school was improving. As for Mother, CASA Bell did not believe that Mother had made progress towards reunification and "would not" say that there was "a reasonable probability of reunification with [M]other." Tr. p. 84. CASA Bell noted that while Child enjoyed a "very motherly" bond with maternal grandmother, Child had a "very minimal" relationship with Mother. Tr. pp. 86, 82.

[22] In testifying that she believed that termination of Mother's parental rights to Child was in Child's best interests, CASA Bell indicated that

> Outside of just … having concerns about [Mother's] behaviors even in my presence and the manipulation [by Mother] that I've noted … is of grave concern for me if [Child] were to ever go back with [Mother]. I would fear for [Child's] life because of the suicidal ideation that she's had with the self-harming behaviors.

Tr. p. 86. In discussing Child's best interests, FCM Bertram also testified that she would have concerns about Child's mental well-being if Child were returned to Mother's care. Specifically, FCM Bertram testified that she did not

believe that Child could safely return to Mother's care because Child "suffers from depression and anxiety and it's exasperated with contact" with Mother. Tr. p. 39. The juvenile court's determination that termination of Mother's parental rights is in Child's best interests is supported by sufficient evidence.

[23] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.