## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2020, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency – Appellate Division

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of Ch.W and Ca. W. (Minor Children) and

M.W. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,[1]

March 23, 2020

Court of Appeals Case No. 19A-JT-2040

Appeal from the Marion Superior Court

The Honorable Mark A. Jones, Judge

The Honorable Peter Haughan, Magistrate

Trial Court Cause Nos.
49D15-1811-JT-1327
49D15-1811-JT-1328

---

[1] Child Advocates, Inc., Appellee/Guardian ad Litem, did not file an appearance or otherwise participate on appeal. However, pursuant to Ind. Appellate Rule 17(A), "[a] party of record in the trial court . . . shall be a party on appeal."

*Appellee-Petitioner.*

**Mathias, Judge.**

[1] The Marion Superior Court entered an order terminating the parental rights of M.W. ("Father") to his minor children Ch.W. ("Son") and Ca.W. ("Daughter"). Father appeals and presents one issue for our review, which we restate as whether the trial court's order terminating Father's parental rights is contrary to the termination statute and precedent interpreting this statute.

[2] We affirm.

## Facts and Procedural History

[3] Father and V.N. ("Mother") (collectively "the Parents") are the biological parents of Son, who was born in May 2015, and Daughter, who was born in December 2016. Mother used methamphetamine and other drugs during her pregnancy with Daughter, who tested positive at birth for amphetamine, methamphetamine, marijuana, and morphine. On December 19, 2016, the Children were removed from the Parents' care, and the Indiana Department of Child Services ("DCS"), filed a petition alleging that the Children were children in need of services ("CHINS") the following day. The CHINS petition alleged that Mother was using illicit drugs during her pregnancy and declined to submit to a drug screen; that Daughter was born with illicit drugs in her system and was suffering from withdrawal symptoms as a result; and that Father had not

demonstrated an ability and willingness to appropriately parent the Children or ensure their safety and well-being while in Mother's care. Following a CHINS detention hearing on December 20, the trial court ordered the Children to remain in foster care.

[4] The trial court held a CHINS fact-finding hearing on April 6, 2017, at which Mother admitted that the Children were in need of services. Father and DCS entered into an agreement whereby he waived the right to a fact-finding hearing if the court approved a home trial visit with Father and if Mother left the family residence. The trial court accepted this agreement, adjudicated the children as CHINS, and placed the children on a trial home visit with Father. This trial placement with Father did not last long. On April 24, 2017, the trial court held a hearing where it found that Father had committed an act of domestic violence against Mother in the presence of the Children. The court ordered the Children removed from Father's custody and set the matter for a modification hearing.

[5] At the May 18, 2017 modification hearing, the trial court modified the original dispositional decree and ordered both Parents to complete a domestic violence assessment and follow all recommendations of the assessment. Father completed the assessment on May 16, 2018, and the assessment provider recommended that Father participate in the Batterer's Intervention Program, a program with twenty-six sessions. Father only attended one session and was eventually terminated from the program for non-compliance.

[6] Father was also ordered to participate in twice-weekly visitations with the Children. Father participated in only five scheduled visits, and he never attended a full visit. Father's visits were suspended in February 2019 due to his failure to attend. Father was not in contact with DCS at all from April 2017 through November 2018. During this CHINS case, Father was repeatedly incarcerated due to his failure to pay child support for his other children.[2] Father also had no stable housing, and he was "on the run" for approximately a year as a result of warrants stemming from his failure to pay child support. Tr. p. 57. Lacking stable housing, Father stayed at various times with his sister, his friends, and his aunt.

[7] The Children thrived in their pre-adoptive foster care, where they were placed in October 2018. Son has medical needs that were being ignored by the Parents, but have been treated in foster care. Parents were aware of Son's medical needs but simply did not follow up with medical providers. Son was also diagnosed with post-traumatic stress, and his symptoms included night terrors, head-banging, tantrums, and dysregulated emotions. Son's behavior has improved due to his treatment while in foster care, and he actively participates in therapy. Since the Parents' visits were terminated, Son's night terrors have abated. Daughter had speech delays that significantly improved since being placed in foster care.

[8] At a November 15, 2018 permanency hearing, the trial court changed the permanency plan from reunification with the Parents to adoption. The court

---

[2] Father admitted that he has four other children with whom he has no significant relationship and for whom he does not provide support.

noted that Mother had continued to test positive for illicit drugs and that Father had had no contact with DCS and had not participated in services.

[9] On November 26, 2018, DCS filed a petition to terminate Father's parental rights to the Children. On June 5, 2019, the trial court dismissed Mother from the termination case, as she had consented to adoption by the foster parents. The trial court held evidentiary hearings on the termination petitions on May 13 and June 5, 2019. On August 5, 2019, the trial court entered exhaustive findings of fact and conclusions of law terminating Father's parental rights to both Children. Father now appeals.

## Termination of Parental Rights

[10] Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[11] DCS must prove each element by clear and convincing evidence. Ind. Code §
31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). Because section
4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only
one prong of subsection 4(b)(2)(B) has been established by clear and convincing
evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[12] Clear and convincing evidence need not establish that the continued custody of
the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty.
Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead
sufficient to show by clear and convincing evidence that the child's emotional
and physical development are put at risk by the parent's custody. *Id.* If the court
finds the allegations in a petition are true, the court shall terminate the parent-
child relationship. Ind. Code § 31-35-2-8(a).

## Standard of Review

[13] We have long had a highly deferential standard of review in cases involving the
termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App.
2011). Thus, on appeal, we neither reweigh the evidence nor assess witness
credibility. *Id.* We consider only the evidence and reasonable inferences
favorable to the trial court's judgment. *Id.* In deference to the trial court's
unique position to assess the evidence, we will set aside a judgment terminating
a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that
which leaves us with a definite and firm conviction that a mistake has been

made. *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied.*

In the present case, Father does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true and determine only whether these unchallenged findings are sufficient to support the judgment. *In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019) (citing *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997); *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*); *see also T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied*.

# Discussion and Decision

Father argues that the trial court clearly erred by concluding that there was a reasonable probability that the conditions that led to the Children's removal from the Parent's home would not be remedied. Specifically, Father claims that the trial court terminated his rights based on his failure to remedy the conditions of unstable housing and unemployment. Father contends that these conditions were not the reasons for removal of the Children from his care. This, he claims, is contrary to Indiana Code 31-35-2-4(b)(2)(B)(i) and the opinions of our supreme court interpreting this statute. This failure to abide by the statute, Father argues, "created a fundamentally unfair hearing which violated [Father]'s due process rights." Appellant's Br. at 6.

[16] Father specifically contends that subsection 4(b)(2)(B)(i) applies only to the conditions that led to the *initial* removal of a child or children from a parent's home. By identifying Father's unstable housing and unemployment when determining that there was a reasonable probability that the conditions that resulted in the Children's removal would not be remedied, Father claims that the trial court identified conditions that were not factors in DCS's initial decision to remove the Children from the Parents' care.

[17] Even if we were to agree with Father that the trial court misinterpreted subsection 4(b)(2)(B)(i) regarding the conditions that led to the Children's removal, he does not challenge the trial court's conclusion, under subsection 4(b)(2)(B)(ii), that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. As noted above, Section 4(b)(2)(B) is written in the disjunctive, and a trial court is required to find that only one prong of subsection 4(b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d at 220. Accordingly, even if the trial court did err in concluding that the conditions that led to the Children's removal would not be remedied, this does not require reversal, as the trial court's judgment is still supported by its unchallenged findings and conclusions that the continuation of the parent-child relationship poses a threat to the well-being of the Children.

[18] Even if Father did challenge the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the Children, he would not prevail. When reviewing the question of whether continuation of the

parent-child relationship poses a threat to a child's well-being, the trial court must consider the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*. The trial court may consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* at 1157. DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead it needs to establish only that a reasonable probability exists that the parent's behavior will not change. *Id.* Actual physical abuse is not required to find that there is a reasonable probability that continuation of the parent-child relationship poses a threat to a child's well-being, and a court need not wait until the child suffers permanent psychological or physical injury before intervening. *In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005), *trans. denied*.

[19] Here, Father committed domestic violence in the presence of the Children. He was referred to domestic violence services and completed the assessment. However, he attended only one session of the domestic violence program and was terminated for non-compliance. He failed to maintain contact with DCS, and he attended only five visits with the Children. And Son's post-traumatic stress symptoms have decreased since visitations were cancelled. Father has demonstrated a lack of stable housing and stable employment. He was on the run from authorities and eventually incarcerated as a result of his failure to support his other children. Under these facts and circumstances, the trial court did not clearly err in concluding that DCS had established, by clear and convincing

evidence, that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Children.[3]

## Conclusion

Father's argument attacks only the trial court's determination, under subsection 4(B)(2)(b)(i) of the termination statute, that there was a reasonable probability that the conditions that led to the Children's removal from the Parent's home would not be remedied. Since subsection 4(B)(2)(b) is written in the disjunctive, the trial court is required to find that only one prong of this subsection has been established. Here, the trial court also found, under subsection 4(B)(2)(b)(ii) that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Children. Father does not challenge this alternative basis for terminating his parental rights, and, even if he did, the evidence clearly supports the trial court's conclusion. Accordingly, Father's argument on appeal fails, and we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Bailey, J., concur.

---

[3] Father argues that the trial court's alleged deviation from the language of the termination statute violated his due process rights. Because we have concluded that the trial court did not violate the termination statute, Father's due process argument necessarily fails.